IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

AMANDA KREIBICH,

                                Plaintiff,

           v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

                                Defendant.

OPINION AND ORDER

20-cv-1045-bbc

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Amanda Kreibich is appealing a decision of the Acting Commissioner of Social Security denying her application for a period of disability and disability benefits under the Social Security Act. In support of her appeal, she raises two claims: 1) the ALJ erred in evaluating the medical opinions; and 2) the provision of the Social Security Act that limits the President's authority to remove the Commissioner of Social Security without good cause, 42 U.S.C. § 902(a)(3), violates the separation of powers, and thus, by extension, the ALJ who decided this case did not have the authority to act on plaintiff's claim.

For the reasons that follow, I am persuaded that plaintiff cannot prevail on either claim. Accordingly, the acting commissioner's decision will be affirmed and plaintiff's claims will be denied.

---

[1] Kilolo Kijakazi has been appointed as Acting Commissioner of Social Security, replacing Andrew Saul.

The following facts are drawn from the Administrative Record (AR).

## FACTS

### I. Social Security Application

Plaintiff applied for disability insurance benefits in August 2018, claiming that she had become disabled in February 2018, when she was 42 years old.  She alleged that she suffers from three severe impairments:  fibromyalgia, depression, and anxiety.  After her application was denied by the state disability determination service initially and on reconsideration, AR 106, 132, she was granted a video hearing on March 3, 2020.  On March 27, 2020, the ALJ issued an opinion denying plaintiff's application on the ground that she had not been disabled from February 28, 2018 through the date of the ALJ's decision.   AR 45.

### II. Physical Medical Opinions

#### A. Dr. Carol Young

Dr. Young, a rheumatologist, first saw plaintiff in September 2017 on referral from Dr. Chad Thurman, who asked Young to evaluate plaintiff's long history of widespread musculoskeletal pain and tenderness resulting from a motor vehicle accident in January 2003.  AR 526.  Dr. Young diagnosed fibromyalgia syndrome and myofacial pain, as well as depression.  AR 525-27; AR 469.

As of April 17, 2018, it was Dr. Young's opinion that plaintiff had been totally and

permanently medically disabled since January 23, 2009.  AR 931.  On August 15, 2018, Dr. Young saw plaintiff, who was complaining of fibromyalgia and sleep disturbance.  AR 469. On April 17, 2019, the doctor noted that "significant improvement in fibromyalgia pain and tenderness are possible but so are unpredictable flares."  AR 709.  She added that "Treatment principles include (1) improvement in the quality and quantity of sleep, 2) muscle conditioning and 3) stress management."  Id.  On the same day, Dr. Young filled out a printed form saying that plaintiff would need to use a walker with a seat, would be unable to work more than two to three days a week, for no more than seven hours a day, and would need unscheduled breaks.  AR 692.  In July 2019, Dr. Young wrote that plaintiff had had a significant reduction in fibromyalgia syndrome with the medications Amitriptyline and Sertraline, AR 469, and  was sleeping better now that she was not drinking.  The doctor encouraged plaintiff to continue her tap dancing, swim in a heated pool, walk on level grassland, and use a stationary bike.  AR 745.

## B. Dr. Chad Thurman

Dr. Thurman saw plaintiff for an examination on April 9, 2018.  AR 486.  He observed that she had no back pain or joint swelling and was found to have a normal range of motion of her neck, AR 488, and normal gait with 5/5 strength in all major muscle groups. She demonstrated much improved psychological functioning, well-controlled anxiety, and lymphedema (for which she was taking the diuretic Maxzide).  AR 489.  Dr. Thurman found that plaintiff had fibromyalgia and anxiety, but assessed her drinking as "her most

concerning health issue" and was encouraged by her attendance at various support groups. Id.  He encouraged her to exercise regularly  and follow a low fat diet.  Id.

C.  State consultants

Two non-examining state agency medical consultants, Patrick Belson, D.O., and Stephanie Green, M.D., reviewed plaintiff's case.  In Dr. Belson's opinion, plaintiff could perform medium exertion work with no additional limitations.  AR 114-115.  Dr. Belson noted that in spite of plaintiff's allegations of widespread musculoskeletal pain and tenderness, she reported symptom improvement on medications, was reported to go hiking and tap dancing, and had relatively normal physical examinations, with normal strength, gait and station and no significant swelling or loss of range of motion.  AR 114.  Dr. Green agreed that plaintiff's allegations of total disability were "significantly out of proportion to the totality of the objective evidence in [the] file," but she found that plaintiff was more limited than Dr. Belson found.  In Dr. Green's view, plaintiff's impairments would limit her to work at the light level of exertion involving occasional postural activities.  AR 128-29.

III. Mental Health Opinions

A. Rebecca Angle, Ph,D.

Psychological consultative examiner Rebecca Angle, Ph.D., saw plaintiff on January 2, 2019 at the request of the local disability agency.  To Dr.  Angle, plaintiff's thought processes seemed logical and coherent and she followed the conversation, but it was "almost

impossible for her to actually answer the questions [she was] asked." AR 667. However, when plaintiff was asked to spell "world" correctly forward and backward, she was able to do so. She could also complete a three-step command, and explain the saying, "You can't judge a book by its cover." Dr. Angle noted that plaintiff said she could perform daily activities, such as cooking, cleaning, grocery shopping and managing her money in a timely manner. AR 668. Plaintiff did not report having any difficulties with concentration or persistence at either her past job as a receptionist or in her daily activities, and reported that could concentrate for the length of an entire movie. AR 668. Plaintiff said it was her pain that prevented her from working full time. AR 669.

Dr. Angle believed that plaintiff had an alcohol use disorder and somatic symptom disorder. AR 669. She thought plaintiff might also meet the diagnostic criteria for anxiety and depression, but noted that plaintiff had reported feeling much better since she stopped drinking alcohol in February 2018. Dr. Angle noted that plaintiff had said that her depression and anxiety were "so much worse when I am drinking. I'm 10 months sober. The longer I stay sober, the happier I am." AR 667. Dr. Angle gave plaintiff a guarded prognosis but concluded that she had no limitations in understanding, remembering, or applying information, only slight limitations in her ability to interact with others, and moderate limitations in concentrating, persisting, and maintaining pace, as well as in adapting or managing herself. AR 667-69.

B. <u>State agency consultants</u>

Two non-examining agency consultants, Robert Barthell, Psy.D., and Stephen Kleinman, M.D., reviewed plaintiff's case and concluded she had no severe mental impairments.  AR 112, 125-26.  After reviewing the reports on file, including the mental status evaluation conducted by Dr. Angle, Dr. Barthell concluded that plaintiff's conditions, whether anxiety, depression, or somatic symptom disorder, "did not appear to cause more than mild mental limitations."  AR 112.  On reconsideration, Dr. Kleinman agreed, finding nothing in the notes from plaintiff's mental health records indicating that she had any significant mental restrictions.  AR 125.

IV. <u>Administrative Hearing</u>

After plaintiff's claims were denied initially and on reconsideration, she was granted a hearing, at which she was represented by counsel.  Plaintiff testified that she lived with her husband and two teenage sons, who helped her out, and is employed as a substitute teacher.  AR 71.  She said she had worked as a substitute teacher earlier in her life, left the job and tried some other jobs, including as a receptionist, and then gone back to subbing in the school system.  AR 72.

Plaintiff testified that in her present job as a substitute, she works no more than three days a week, usually from 7:30 to 2:45, and usually for only two days a week.  <u>Id</u>.  When she works, it is either as an educational assistant or as a substitute teacher.  <u>Id</u>.  She generally lifts no more than 10 pounds at a time and spends most of her time at work moving through

6

the school rooms to check on the students.  AR 73.  She estimates that only about 10% of her day is spent sitting down.  Id.

Plaintiff said she could not work full time because she needs a job where she can sit for only brief periods before taking a break to walk around.  She said substitute teaching full time would be too hard on her body because "she often did not have a comfortable place to sit," AR 85, and she has difficulty bending at the waist, for example, to help a student at his or desk, and then standing up.  She also said she can't work more than two days a row because it increases her pain and bladder spasms due to interstitial cystitis.  AR 83-86; 95-96.

Laila Slaise testified as a vocational expert.  The ALJ posed a hypothetical asking whether a person of plaintiff's age, education, and past work, limited to only sedentary work requiring only occasional ramps, stairs, ramps, or scaffolds, occasional balancing, stooping, kneeling, crouching and crawling, and which allowed the person to stand for five minutes after 30 minutes of sitting, would be able to perform any of the jobs that plaintiff had previously held.  The vocational expert testified that a person with such limitations could perform plaintiff's past work as a receptionist as it is generally performed.  AR 100.  The expert also identified a significant number of other unskilled, sedentary jobs in the national economy that such an individual could perform, which included, but were not limited to, document preparer (approximately 49,047 jobs); cutter-and-paster (approximately 3,336 jobs); and call-out operator, approximately 11,655 jobs).  AR 100.

V. <u>The ALJ's Decision</u>

Following the regulations' five-step sequential evaluation of disability, 20 C.F.R. § 404.1520, the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since February 28, 2018, the date of her alleged onset.  At steps two and three, the ALJ found that plaintiff had the severe impairments of fibromyalgia and obesity, as well as a number of non-severe physical impairments, including bilateral plantar fasciitis, bilateral carpal tunnel, hypertension, lymphedema, interstitial cystitis, and a history of alcohol abuse. The ALJ concluded that the impairments of fibromyalgia and obesity significantly limited plaintiff's ability to perform basic work activities and were considered severe under the regulations, but did not preclude plaintiff from performing all work activity.  AR 35-37.

The ALJ considered plaintiff's depression, anxiety, and somatic symptom disorder, but found that whether they were considered separately or in combination, they did not cause more than minimal limitation of plaintiff's ability to perform basic mental work activities and were therefore non-severe.  AR 37-38.  Considering the four broad areas of functioning set out in the regulations for evaluating mental disorders, the ALJ concluded that plaintiff had no more than mild limitations.   The ALJ agreed with Dr. Angle, the psychological consultative examiner, that plaintiff had no limitations in understanding, remembering, and applying information, and only slight limitations in her ability to interact with others.  AR 37.  However, the ALJ found unpersuasive Dr. Angle's opinion that plaintiff had moderate limitations in concentrating, persisting, or maintaining pace or in adapting or managing herself.  The ALJ explained that Dr. Angle's opinion was not consistent with her

own mental status examination, which noted that plaintiff had a difficult time staying on track but that she could spell the word "world" forward and backward, complete a three-step command, and maintain concentration for the length of a movie.  In addition, found the ALJ, moderate limitations were not consistent with the record as a whole, which indicated that plaintiff demonstrated much improved psychological functioning once she stopped drinking alcohol.  Id.  The ALJ was more persuaded by the state agency psychological consultants' conclusion that plaintiff's mental impairments were not severe, noting that their opinions were "supported by explanation and consistent with the great weight of evidence." AR 38.

After determining that plaintiff did not have an impairment or combination of impairments that met or equaled the severity of a listed impairment in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526, AR 38, the ALJ found that plaintiff had the residual functional capacity to perform sedentary work, as defined in § 404.1567(a), so long as it required only occasional postural activities and allowed her to sit no more than 30 minutes at a time before needing a five minute period of standing, all the while remaining on task. AR 42.  The ALJ recognized that plaintiff had chronic pain related to her fibromyalgia and that her obesity might contribute to her pain and reduced mobility, but she was not persuaded that it would prevent plaintiff from doing any full time work of any kind whatsoever.  AR 40.  The ALJ questioned plaintiff's asserted inability to work, when the evidence showed that she engaged frequently in strenuous activities such as kayaking, hiking, tap dancing, camping, and home repair projects.  The ALJ also found plaintiff's testimony

that she was limited in what she could do independently at odds with previous reports in which she said she received little help from her sons.  AR 41, citing AR 666, 739.  The ALJ also cited Dr. Angle's January 2, 2019 report that plaintiff had said she was unpacking boxes and organizing items in connection with a recent move by her family and was capable of cooking, cleaning, and shopping for groceries.  AR 668.  The ALJ found that these daily activities, in conjunction with the evidence of plaintiff's ability to work part-time as a substitute teacher during the period at issue, supported a conclusion that plaintiff could perform sedentary work on a full-time basis.  AR 41.

The ALJ also noted that plaintiff had told Dr. Angle that she had trouble finding jobs because the jobs she loved turned out to be too hard physically or because she found the jobs she could handle were ones that she hated.  Id.  As the ALJ observed, this was an acknowledgment by plaintiff that there were jobs she could perform, but did not take because she hated them, but plaintiff's feelings about the jobs were not something that could be considered by the ALJ.  Id.  She was limited to deciding whether plaintiff could perform any work in the national economy in light of her vocational abilities.  Id.

Assessing the medical opinions concerning plaintiff's physical limitations, the ALJ found Dr. Young's assessment of plaintiff's limitations only partially persuasive.  She credited the doctor's conclusion that plaintiff should lift no more than 10 pounds and alternate between sitting for 30 minutes and standing for five minutes, finding those conclusions supported by the record as a whole, including plaintiff's hearing testimony.  However, the ALJ rejected Dr. Young's submission that plaintiff needed a walker,

unscheduled breaks, or a shortened work week, finding those conclusions "not supported by any explanation or consistent with the overall record." AR 42. The ALJ found that neither plaintiff's testimony nor the objective medical evidence supported the need for a walker, and that the limitation to short days and work weeks appeared to be based on plaintiff's own subjective reports regarding her ability to work as a substitute teacher, not on any objective medical evidence. AR 42. Overall, the ALJ found that the objective medical evidence, which consistently showed that plaintiff had mild pain and no significant joint abnormalities, showed that she could tolerate the full-time demands of work at the sedentary exertion level. Id.

As for the state agency consultants, the ALJ found Dr. Green's opinion more persuasive than Dr. Belson's because it recognized that plaintiff faced greater exertional limitations and accounted for the pain and mobility limitations caused by plaintiff's fibromyalgia and obesity. AR 42. However, the ALJ also found that the expanded record at the hearing supported an even more restrictive residual functional capacity than Dr. Green had assessed.

The ALJ found the testimony by the vocational expert persuasive and adopted it, concluding at step four of the sequential evaluation process that plaintiff's residual functional capacity did not prevent her from performing her past relevant work as a receptionist as it is generally performed. AR 43. The ALJ went on to make an alternative step five finding, concluding that in addition to her past relevant work, plaintiff could perform other jobs existing in significant numbers in the national economy, namely

document preparer, call-out operator, and cutter-and-paster.  AR 44.

OPINION

Plaintiff's case is before the court on two claims.  The first is her argument that the ALJ failed to properly evaluate the medical opinions concerning plaintiff's mental and physical impairments.  The second is her argument that 42 U.S.C. § 902(a)(3) is unconstitutional in light of the Supreme Court's decision Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183 (2020).  Neither argument is persuasive.

I. Medical Opinion Assessment

Plaintiff argues that the ALJ erred in assessing the medical opinions.  Because plaintiff's claim was filed after March 27, 2017, the ALJ was required to consider these opinions in accordance with the commissioner's new rules for considering medical opinions, set forth at 20 C.F.R. §§ 404.1520c.  Under these rules, the opinions of state agency physicians are considered "prior administrative medical findings" that the ALJ must consider, along with any other medical opinions, with no opinion entitled to any deference or specific evidentiary weight.  Id.  As under the prior rules, the ALJ is to consider a number of factors in evaluating each opinion's persuasiveness, including supportability, consistency, the provider's speciality and relationship with the claimant, with supportability and consistency being the most important.  Id.  Finally, although ALJs must discuss in their decisions how persuasive they find the various medical opinions and prior administrative medical findings,

12

they need only explain how they considered the supportability and consistency factors; discussion of the other factors is optional except when two medical opinions are otherwise equally persuasive.  Id.

Plaintiff acknowledges that the ALJ addressed all of the medical opinions and explained her findings as to their supportability and consistency with other evidence in the record.  She insists, however, that the ALJ's rationale was inadequate.  With respect to the mental health opinions, she argues first that the ALJ erred by putting "herself in the position of medical expert by overriding Dr. Angle's assessment."  Plt.'s Br., dkt. #15, at 14. Specifically, plaintiff argues that the ALJ lacked the expertise to interpret Dr. Angle's mental status evaluation and to conclude that it supported only mild limitations in concentrating, persisting, or maintaining pace or in adapting or managing herself, instead of moderate limitations, as Dr. Angle found.  I disagree.  It is well-settled than an ALJ can reject medical opinions that are internally inconsistent or inconsistent with medical evidence.  See, e.g., Gibbons v. Saul, 801 F. App'x 411, 416 (7th Cir. 2020) ("an ALJ is not required to accept opinions contradicted by other medical evidence"); Hinds v. Saul, 799 F. App'x 396, 399 (7th Cir. 2020) (proper for ALJ to discount treating physician's opinion that claimant suffered from constant lower lumbar pain where months earlier physician noted that claimant had normal gait and range of motion and no muscle or joint pain).  Further, an ALJ is entitled to draw common-sense conclusions from medical records where they are written in "plain English" and not beyond the ability of a lay person to understand.  Callaway v. Saul, No. 19-CV-818-JDP, 2020 WL 2214385, at *2 (W.D. Wis. May 7, 2020).

13

Here, the ALJ did not need medical expertise to identify inconsistencies between Dr. Angle's examination and her opinions.  The ALJ reasonably noted that Dr. Angle's assessment of "moderate" limitations in concentrating and persisting were not consistent with plaintiff's ability to perform the concentration exercises that Dr. Angle asked her to perform, or with plaintiff's reported ability to concentrate throughout an entire movie and complete daily activities such as grocery shopping, paperwork, and bill paying.  Likewise, the ALJ reasonably observed that plaintiff reported that her depression and anxiety were much improved once she stopped drinking alcohol.  Indeed, when asked at the hearing to explain why she could not work full time, plaintiff identified only physical restrictions and did not suggest that she had any concentration or other mental problems.  In light of this record, the ALJ reasonably determined that the state agency psychologists' determination that plaintiff had at most mild mental limitations was more persuasive than Dr. Angle's.  Accord Sebranek v. Kijakazi, Appeal No. 20-3399, Slip Op. at 7 (7th Cir. Feb. 22, 2022) (rejecting plaintiff's argument that ALJ "played doctor" by finding she had less severe mental limitations than found by state agency consultants and examiners)(nonprecedential disposition).

Plaintiff suggests that the ALJ failed to consider that Dr. Angle's assessment of moderate limitations in concentrating and persisting may have been related to her opinion that plaintiff has somatoform disorder, which can "cause distressing physical symptoms that lack a physical cause and arise instead from emotional conflict or anxiety."  Olson v. Berryhill, No. 15-cv-172, 2017 WL 4217175, at *6 (W.D.Wis. Sept. 21, 2017).  Plaintiff

14

is mistaken.  The ALJ did not ignore the diagnosis of somatoform disorder.  In fact, she found that plaintiff had such an impairment, but, she also found that the impairment did not cause plaintiff more than minimal limitation of her ability to perform basic mental work activities.  Insofar as plaintiff is suggesting that the ALJ should have given more credence to her subjective complaints of pain because of this diagnosis, this is effectively a challenge to the ALJ's subjective symptom assessment.  Even though plaintiff has not developed any separate challenge to the ALJ's subjective symptom analysis, that challenge would fail.  As the ALJ observed, plaintiff engages in physical activities such as kayaking, walking, hiking, tap dancing, camping, readying her house for sale, and renovating her new house.  She was able to work part-time as a substitute teacher, which was more physically demanding than the ALJ's ultimate residual functional capacity assessment.  Finally, the ALJ noted that plaintiff had told Dr. Angle that she had found jobs that she could perform but she did not enjoy them.  All of these reasons amply support the ALJ's determination that plaintiff's subjective allegations of disabling pain – whether due to fibromyalgia or a somatic symptom disorder –  were not credible.

Finally, plaintiff argues that the ALJ failed to assess the physical medical opinions for consistency and supportability as required by the regulation.  Once again, however, a review of the ALJ's decision shows that plaintiff is incorrect:  the ALJ addressed all of the opinions (Dr. Young's, Dr. Belson's and Dr. Green's) and made findings as to their supportability and consistency.  Plaintiff's challenge to the ALJ's weighing of the medical opinions amounts to little more than an invitation for this court to reweigh the evidence.  However, it is not

15

enough simply to assert that there is evidence from which the ALJ could have reached the opposite conclusion. Olsen v. Colvin, 441 F. App'x 868, 875 (7th Cir. 2014) (it is plaintiff's "burden to show that the ALJ's decision is not supported by substantial evidence,"not just that there is evidence from which the ALJ could have reached the opposite conclusion."). Here, the evidence of plaintiff's wide range of physical activities, along with the objective medical evidence, which consistently showed that plaintiff had mild pain and no significant joint abnormalities, amply supports the ALJ's showed that she could tolerate the full-time demands of work at the sedentary exertion level in spite of her fibromyalgia and obesity.

In summary, I conclude that plaintiff has not shown that the ALJ did not properly weigh the medical opinions or otherwise err in denying plaintiff's application for a period of disability and disability benefits under the Social Security Act.


## II. Constitutional Challenge

42 U.S.C. § 902(a)(3) limits the authority of the President to remove the Commissioner of Social Security before the expiration of the commissioner's six year term. Plaintiff contends that this removal provision is unconstitutional under the Supreme Court's recent decision in Seila Law LLC v. Consumer Fin. Prot. Bureau, 140 S. Ct. 2183 (2020), which held that limitations on the President's ability to remove the single head of an administrative agency violate the separation of powers. Plaintiff contends that because § 902(a)(3) is unconstitutional, the ALJ lacked the authority to act on her claim and she is entitled to a remand for a new, constitutionally adequate hearing. The Acting

Commissioner, Kilolo Kijakazi, concedes that the removal provision would be considered unconstitutional under <u>Seila</u>, but denies that the result is a voiding of all agency action.

I agree with the acting commissioner.  The Supreme Court has made it clear since <u>Seila</u> was decided that a defective removal provision does not automatically void all agency action.  <u>Collins v. Yellen</u>, 141 S.C. 1761, 1788, n.23 (2021) ("the unlawfulness of [a] removal provision does not strip [an official] of the power to undertake the other responsibilities of his office.").  In the same case, the Supreme Court held that even if an unconstitutional statutory removal provision is present, a plaintiff cannot obtain retrospective relief without showing that "the unconstitutional provision . . . inflict[ed] compensable harm." <u>Id</u>. at 1789.  Judges in this court have relied on <u>Collins</u> in holding that "a plaintiff seeking to bring such a constitutional challenge must demonstrate that the alleged unconstitutional, statutory removal restriction actually caused [the plaintiff] some injury, and plaintiff has failed to do so here." <u>Schwechel v. Kijakazi</u>, No. 20-CV-700-WMC, 2022 WL 135022, at *5 (W.D. Wis. Jan. 14, 2022) (noting that no other district or circuit court has credited argument to date).  <u>See also</u> <u>Hale v. Kijakazi</u>, No. 20-CV-866-WMC, 2022 WL 135274, at *4 (W.D. Wis. Jan. 18, 2022 (holding same); <u>Roth v. Kijakazi</u>, No. 20-CV-1077-JDP, 2021 WL 6662062, at *6 (W.D. Wis. Dec. 22, 2021) ("Because Roth has not alleged any connection between the removal provision and the decision denying him benefits, he is not entitled to remand on this basis.")

As in these cases, plaintiff contends that the decision to deny her benefits was based on a constitutionally improper process, but she has failed to set forth any basis for a finding

that she was harmed by Social Security's structure or shown that the relevant statutory removal restriction caused the denial of her claim.  Roth, 2021 WL 6062062 at *5 (citing Collins, 141 S. Ct. at 1789, as "suggest[ing] that  harm could be fairly traced to the removal provision where 1) the commissioner played a role in the agency action and 2) the President would have removed the commissioner to prevent the action but-for the removal provision.") Plaintiff has merely identified a conflict between the Constitution and 42 U.S.C. § 902(a)(3).  That is not enough.  Collins,141 S. Ct.  at 1790 ("[I]dentifying some conflict between the Constitution and a statute is not enough.  [Plaintiffs] must show that the challenged Government action at issue . . . was, in fact, unlawful.") (Thomas, J., concurring). Accordingly, I conclude that the alleged unconstitutionality of the acting commissioner's authority does not provide a basis for remand in this case.

ORDER

IT IS ORDERED that the decision of Kilolo Kijakazi, Acting Commissioner of Social Security, denying plaintiff's motion for a period of disability and disability benefits is AFFIRMED, and plaintiff Amanda Kreibich's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 23d day of February, 2022.

BY THE COURT:

/s/

_____

BARBARA B. CRABB
District Judge

18

19